## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| EDWARD HASBROUCK<br>1130 Treat Avenue<br>San Francisco, CA 94110,<br><br>    Plaintiff,<br><br>v.<br><br>NATIONAL ARCHIVES AND<br>RECORDS ADMINISTRATION<br>8601 Adelphi Road<br>College Park, MD 20740,<br><br>    Defendant. | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* | Civil Action No. 1:21-cv-00444 |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## **COMPLAINT**

Plaintiff Edward Hasbrouck brings this action against Defendant National Archives and Records Administration pursuant to the Freedom of Information Act, 5 U.S.C. § 552, *et seq.*, *as amended* ("FOIA"), the Federal Records Act ("FRA"), 44 U.S.C. §§ 2101 *et seq.*, 3010 *et seq.*, and 3301 *et seq.*, which includes the Disposal of Records Act, 44 U.S.C. §§ 3301-3314; the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and the All Writs Act, 28 U.S.C. § 1651.

## **JURISDICTION**

1.  This Court has both subject matter jurisdiction over this action and personal jurisdiction over Defendants pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

## **VENUE**

2.  Venue is appropriate under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391.

## PARTIES

3. Plaintiff Edward Hasbrouck is a citizen of the United States and a resident of the State of California. As an award-winning freelance journalist, Hasbrouck is a representative of the news media within the meaning of 5 U.S.C. § 552(a)(4)(A).

4. During its existence, the National Commission on Military, National, and Public Service ("Draft Commission") was an agency within the meaning of 5 U.S.C. § 552(e) and was in possession and/or control of the records requested by Hasbrouck which are the subject of this action.

5. Defendant National Archives and Records Administration ("NARA") became the successor agency to the Draft Commission upon the expiration of the Draft Commission's statutory mandate on 18 September 2020. NARA is an agency within the meaning of 5 U.S.C. § 552(e) and is in possession and/or control of the records requested by Hasbrouck which are the subject of this action.

## BACKGROUND

### *PART I: THE DRAFT COMMISSION*

6. The Draft Commission was a temporary federal agency established by the National Defense Authorization Act ("NDAA") for Fiscal Year 2017, Pub. L. No. 114-328, on 23 December 2016.

7. The Draft Commission, as described by the 2017 NDAA, was created for two main purposes: (1) "[to] conduct a review of the military selective service process (commonly referred to as 'the draft')"; and (2) "[to] consider methods to increase participation in military, national, and public service in order to address national security and other public service needs of the Nation."

8. The Draft Commission was statutorily tasked with considering the following matters: (1) "the need for" the draft, "including the continuing need for a mechanism to draft large numbers of replacement combat troops"; (2) "means by which to foster a greater attitude and ethos of service among United States youth, including an increased propensity for military service"; (3) "the feasibility and advisability of modifying" the draft so that the United States may "obtain for military, national, and public service individuals with [e.g., medical, dental, nursing, language, cyber, science, technology, engineering, and/or mathematics skills] for which the Nation has a critical need, without regard to age or sex"; and (4) "the feasibility and advisability of including in the military selective service process . . . an eligibility or entitlement for the receipt of one or more Federal benefits . . . specified by the Commission for purposes of the review."

9. The Draft Commission and its purview marked the first time in decades that a federal commission had studied and made recommendations to Congress on topics including whether to end the draft, whether to extend the draft to women, whether to extend the draft regardless of age or gender to individuals with certain special skills, whether the draft is feasible, whether the government should institute compulsory civilian or military national service, and more.

10. During its existence, the Draft Commission took comments from the public verbally and in writing at in-person public events, by email, through a form on its official agency website, and through its official agency social media accounts, and it held both public hearings and closed door, invitation-only consultations and meetings.

11. Despite the 2017 NDAA providing that "[e]ach meeting of the Commission shall be held in public unless any member objects or classified information is to be considered," most of the Draft Commission's meetings were not open to the public.

12. The Draft Commission released an interim report on 23 January 2019.

13. The Draft Commission released its final report and recommendations on 25 March 2020.

14. The Draft Commission ceased to exist as a federal agency on 18 September 2020, when its statutory mandate expired.

### *PART II: NARA AS THE DRAFT COMMISSION'S SUCCESSOR AGENCY*

15. When the Draft Commission expired, NARA assumed legal custody and control of its remaining records.

16. Records of temporary agencies are customarily transferred to NARA or another permanent agency for various reasons, including the need to ensure that they remain accessible and subject to FOIA.

17. On 8 October 2020, NARA confirmed to Hasbrouck that it had "essentially taken legal custody of" the Draft Commission's permanent records on 22 September 2020.

18. However, NARA maintains that it does not have legal custody of any of the Draft Commission's temporary records which were scheduled for destruction upon the termination of the Draft Commission, claiming that no agency has legal custody because the records were scheduled for destruction.

19. NARA has repeatedly confirmed to Hasbrouck that it has physical custody and/or actual control of the temporary Draft Commission records at issue in this case and will not destroy them during the course of this litigation. NARA has repeatedly stated that it would

destroy these records if Hasbrouck did not file a lawsuit by a date certain, which was extended by agreement of the parties until 21 February 2021.

### *PART III: HASBROUCK'S REQUESTS*

20. Hasbrouck filed eleven total FOIA requests with the Draft Commission during its existence.

21. Two of these requests were relatively narrow in scope, were responded to satisfactorily, and are not contested in this lawsuit.

22. Seven of these requests were partially responded to by the Draft Commission. The first of these requests to the Draft Commission was filed on 3 May 2018, and the last was filed on 5 August 2020.

23. In early September 2020, Hasbrouck received emails from the Draft Commission stating that his pending requests were now "considered closed." Hasbrouck appealed each of these decisions soon after receipt of these emails.

24. The Draft Commission promptly denied Hasbrouck's appeals on 16 September 2020.

25. Hasbrouck filed two more FOIA requests with the Draft Commission in its final weeks. The first such request was filed on 25 August 2020, and the second such request was filed on 15 September 2020. The Draft Commission acknowledged receipt of the 15 September 2020 request by email but refused to "accept" it as a FOIA request, claiming that because the Draft Commission had put notice on its website that it would no longer accept FOIA requests after 11 September 2020, it did not have to do so. Instead, the Draft Commission explained that FOIA requests for the Draft Commission's permanent records should be made to NARA.

26. On 21 September 2020, Hasbrouck filed a FOIA request with NARA for the records transferred after the end of the Draft Commission's existence.

27. NARA split Hasbrouck's FOIA request to NARA into two parts, one each for the sets of Draft Commission records deemed "permanent" and "temporary."

28. The portion of the NARA request for the Draft Commission records deemed "permanent" (Request No. ER0566) has been responded to in five different parts since 5 November 2020 but is not yet complete. However, this portion is not contested in this lawsuit.

29. NARA has informed Hasbrouck that it does not consider the request for the portion of the Draft Commission records deemed "temporary" (Request No. NGC20-638) to be "a request for records contained within the NCMNPS temporary records that were appropriately scheduled for disposal upon the termination of the Commission on September 18, 2020 and that NARA is holding for a short interim period" and that "NARA will not accept FOIA requests for those records."

30. NARA has informed Hasbrouck that it will not take any action regarding the FOIA requests that he filed with the Draft Commission.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

## (UNLAWFUL DESTRUCTION OF RECORDS AND REMOVAL FROM CUSTODY)

31. Hasbrouck repeats and realleges the allegations contained in all paragraphs set forth above.

32. General Records Schedule ("GRS") 4.2 states that FOIA case files cannot be destroyed until six years after the final agency action on the request.

33. GRS 4.2 further states that FOIA case files include requests, replies, copies of requested records, administrative appeals, and related supporting documents.

34. NARA Transmittal No. 27 explains that GRS 4.2 was written in part to "ensure[] that agencies retain records as long as a requester has the right to challenge or appeal either a denial or the adequacy of a positive response, thereby making sure agencies still have the records if the requester wins the appeal."

35. 36 C.F.R. § 1230.10 states, in pertinent part, "The heads of Federal agencies must[] . . . [p]revent the unlawful or accidental removal[] . . . or destruction of records."

36. 36 C.F.R. § 1230.3(b) defines "unlawful or accidental destruction" in part as "disposal prior to the end of the NARA-approved retention period of a temporary record" or "disposal of a record subject to a FOIA request."

37. Destroying temporary records subject to a FOIA request simply because the agency to which the FOIA request was directed no longer exists is a violation of the FRA and 36 C.F.R. § 1230.10.

38. Hasbrouck has a legal right to a declaratory judgment that: (1) the destruction of temporary records subject to a FOIA request in fewer than six years from the date of the final agency action is a violation of the FRA and 36 C.F.R. § 1230.10; and (2) a determination that no federal agency has legal custody of such records if the originating agency ceases to exist during that time is also a violation of the FRA and 36 C.F.R. § 1230.10.

39. The requested declaratory judgment will potentially terminate the controversy by signaling to NARA that it may not destroy the temporary records at issue in this case and must accordingly process Hasbrouck's FOIA requests properly.

## SECOND CAUSE OF ACTION

## (RECORDS DENIAL – 9 REQUESTS)

40. Hasbrouck repeats and realleges the allegations contained in all paragraphs set forth above.

41. Between May 2018 and September 2020, Hasbrouck submitted to the Draft Commission nine requests for various categories of records.

42. Eight of these requests were acknowledged by the Draft Commission and assigned Req. Nos. 2018-SP-01, 2018-SP-03, 2019-CP-01, 2019-SP-01, 2019-SP-04, 2020-SP-08, 2020-SP-29, and 2020-SP-33.

43. The request submitted on 15 September 2020 was not accepted by the Draft Commission and not assigned a Request Number.

44. The Draft Commission closed all of Hasbrouck's pending requests and appeals—except for the request submitted on 15 September 2020—in September 2020, and NARA has informed Hasbrouck that it will take no action on the pending requests and appeals submitted to the Draft Commission.

45. Hasbrouck has exhausted all required administrative remedies.

46. Hasbrouck has a legal right under FOIA to obtain the information he seeks from these nine requests, and there is no legal basis for the denial by NARA of said right.

## THIRD CAUSE OF ACTION

## (RECORDS DENIAL – NGC20-638)

47. Hasbrouck repeats and realleges the allegations contained in all paragraphs set forth above.

48.     On 21 September 2020, Hasbrouck submitted to NARA a request for various categories of Draft Commission records.

49.     On 24 September 2020, NARA acknowledged receipt of this request and informed Hasbrouck that it had separated it into two parts: one part for "permanent" records and one part for "temporary" records.

50.     NARA assigned the request for "temporary" records Req. No. NGC20-638.

51.     NARA further stated, "Please note that any search for NCMNPS temporary records will be limited to those temporary records that were subject to a retention period beyond the termination of the Commission pursuant to the General Records Schedule (GRS) for which NARA took legal custody. This is not deemed to be a request for records contained within the NCMNPS temporary records that were appropriately scheduled for disposal upon the termination of the Commission on September 18, 2020 and that NARA is holding for a short interim period."

52.     Hasbrouck has exhausted all required administrative remedies.

53.     Hasbrouck has a legal right under FOIA to obtain the information he seeks, including "records contained within the NCMNPS temporary records that were appropriately scheduled for disposal upon the termination of the Commission on September 18, 2020 and that NARA is holding for a short interim period," and there is no legal basis for the denial by NARA of said right.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Edward Hasbrouck prays that this Court:

(1)     Issue a declaratory judgment that the destruction of temporary records subject to a FOIA request in fewer than six years from the date of the final agency action is a violation of the FRA and 36 C.F.R. § 1230.10;

(2) Issue a declaratory judgment that a determination that no federal agency has legal custody of such records if the originating agency ceases to exist during that time is a violation of the FRA and 36 C.F.R. § 1230.10;

(3) Order the National Archives and Records Administration to release all requested records to him at no charge;

(4) Order preliminary and permanent injunctive and/or declaratory relief as may be appropriate;

(5) Award reasonable costs and attorneys' fees as provided in 5 U.S.C. § 552(a)(4)(E), 28 U.S.C. § 2412(d), or any other applicable law;

(6) Expedite this action in every way pursuant to 28 U.S.C. § 1657(a); and

(7) Grant such other relief as the Court may deem just and proper.

Date:   February 21, 2021

                                        Respectfully submitted,

                                        /s/ Kelly B. McClanahan
                                        Kelly B. McClanahan, Esq.
                                        D.C. Bar #984704
                                        National Security Counselors
                                        4702 Levada Terrace
                                        Rockville, MD 20853
                                        301-728-5908
                                        240-681-2189 fax
                                        Kel@NationalSecurityLaw.org

                                        *Counsel for Plaintiff*