IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EDWARD HASBROUCK,<br><br>      Plaintiff,<br><br>  v.<br><br>NATIONAL ARCHIVES AND RECORDS ADMINISTRATION,<br><br>      Defendant. | Case No. 1:21-cv-444 (DLF) |

**DEFENDANT'S MOTION TO DISMISS IN PART AND STATEMENT OF POINTS & AUTHORITIES IN SUPPORT THEREOF**

Defendant hereby moves to dismiss the Complaint in part pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). For the reasons discussed below, the Court should dismiss the first and second causes of action of the Complaint, ECF No. 1.

## INTRODUCTION

The National Commission on Military, National, and Public Service (the "Commission") was a temporary federal agency whose statutory mandate expired in September 2020 and which thereafter ceased to exist. Before the Commission's termination, Plaintiff Edward Hasbrouck submitted a number of requests to it under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"). The Commission's responses to those requests did not satisfy Plaintiff. However, Plaintiff failed to take legal action against the Commission itself, while it existed. Instead, Plaintiff now seeks relief against a wholly separate federal agency, the National Archives and Records Administration ("NARA"), notwithstanding the fact that NARA is not a successor agency to the Commission, and Plaintiff fails to allege that NARA took any action at all on the requests in contravention of Plaintiff's rights. The basic tenets of Article III of the Constitution and of FOIA forbid Plaintiff's attempt to obtain FOIA relief against NARA regarding requests he submitted to a different agency. Threshold defects also defeat Plaintiff's request for declaratory judgment that the potential destruction of temporary Commission records violates the Federal Records Act ("FRA") and its implementing regulations and standards. Plaintiff lacks a cause of action under the FRA and fails to plead any basis for relief under the Administrative Procedure Act ("APA") against NARA.

In short, the first and second causes of action of the Complaint, should be dismissed.

**BACKGROUND**

I.  **STATUTORY AND REGULATORY FRAMEWORK**

Plaintiff's lawsuit implicates two distinct statutory schemes: the Federal Records Act and the Freedom of Information Act. This background briefly describes pertinent portions of each statute and related regulations.

A.  **The Federal Records Act**

The Federal Records Act is "a collection of statutes governing the creation, management, and disposal of records by federal agencies." *Pub. Citizen v. Carlin*, 184 F.3d 900, 902 (D.C. Cir. 1999). Under the FRA, agencies are required to "make and preserve records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency[.]" 44 U.S.C. § 3101. Agencies must also "establish and maintain an active, continuing program for the economical and efficient management of the records of the agency." *Id.* § 3102. The Archivist of the United States "provide[s] guidance and assistance to Federal agencies" in carrying out these obligations. *Id.* § 2904(a)(1)–(2). The Archivist may also "promulgate standards, procedures, and guidelines with respect to records management." *Id.* § 2904(c)(1).

The FRA requires that the disposal of all federal records be approved by the Archivist. *Id.* § 3303; *see also* 36 C.F.R. § 1225.10. There are two mechanisms for authorizing such disposal. The Archivist can, after publication of notice in the Federal Register and opportunity for comment, promulgate government-wide records schedules "authorizing the disposal, after the lapse of specified periods of time, of records of a specified form or character common to several or all agencies." 44 U.S.C. § 3303a(a),(d). The schedules issued by the Archivist under this authority are called the General Records Schedules ("GRS"). 36 C.F.R. § 1227.10. Agencies may also

submit to NARA for approval their own records schedules, which are also published in the Federal Register for public comment before being finalized. 44 U.S.C. §§ 3303(3), 3303a(a); 36 C.F.R. §§ 1225.10–1225.26. Under either form of records schedule, records are generally classified as either permanent, in which case the records are eventually transferred into the National Archives for permanent preservation, *see id.* § 1225.14, or temporary, in which case the records may be destroyed after a set period of time. *See id.* § 1225.16.

The FRA establishes a scheme for enforcement of its provisions by the Government. Specifically, the head of a federal agency is required to notify the Archivist of "any actual, impending, or threatened unlawful removal . . . or other destruction of records in the custody of the agency" and to pursue, with the Archivist's assistance, "action through the Attorney General for the recovery of records . . . unlawfully removed from that agency." *See* 44 U.S.C. § 3106(a). The Archivist may also be obligated to request the Attorney General's initiation of an action for recovery of records in certain circumstances where the head of the relevant agency does not take action "within a reasonable period of time after being notified" of unlawful removal of records. *See id.* §§ 2905(a), 3106(b). The FRA does not contain any private right of action allowing non-governmental parties to enforce its provisions, although limited claims can be made through the Administrative Procedure Act. *See Armstrong v. Bush,* 924 F.2d 282, 291 (D.C. Cir. 1991).

B.     **Freedom of Information Act**

FOIA establishes that an "agency" shall make "records promptly available to any person" upon receipt of a "request for records" that conforms to certain statutory and regulatory requirements. *See* 5 U.S.C. § 552(a)(3)(A). FOIA further establishes that district courts have "jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." *Id.* § 552(a)(4)(B). The Supreme

3

Court interprets this provision to mean that "federal jurisdiction" for a FOIA claim "is dependent on a showing that an agency has (1) 'improperly' (2) 'withheld' (3) 'agency records.'" *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989) (quoting *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980)).

## II.    FACTUAL AND PROCEDURAL HISTORY

### A.    The Commission and Plaintiff's FOIA Requests to It

This lawsuit turns on preservation of and access to records of the National Commission on Military, National, and Public Service.  Congress established the Commission to "conduct a review of the military selective service process" and "consider methods to increase participation in military, national, and public service."  National Defense Authorization Act for Fiscal Year 2017 ("2017 NDAA"), Pub. L. No. 114-328, § 551(a), 130 Stat. 2000, 2130 (2016).  The Commission's ultimate purpose was to issue a "report containing the findings and conclusions of the Commission, together with the recommendations of the Commission regarding the matters reviewed by the Commission."  *Id.* § 555(e)(1), 130 Stat. 2136.  The Commission was established in the Executive Branch as an "independent establishment" and "temporary organization."  *Id.* § 553(a), 130 Stat. 2132.  In keeping with its temporary status, the statute creating the Commission provided that it would "terminate not later than 36 months after" its establishment.  *Id.* § 557, 130 Stat. 2137.  The Commission did in fact terminate on September 18, 2020.  Compl. ¶ 14.

Plaintiff submitted eleven FOIA requests to the Commission during its existence, between May 3, 2018 and September 15, 2020.  Compl. ¶¶ 20, 22, 25.  Two of the requests are not at issue in this lawsuit.  Compl. ¶ 21 (deeming the Commission's response to these requests satisfactory). The Commission's handling of the remaining nine requests are challenged in the Complaint's second cause of action.  The Commission issued determinations on eight of these requests, granting

4

and denying in various respects, Compl. ¶¶ 22, 42, 44. Plaintiff filed administrative appeals as to these requests, which were denied by the Commission before its expiration in September 2020. Compl. ¶¶ 23, 24, 44. Plaintiff's last request to the Commission was submitted September 15, 2020, but was not accepted by the Commission in light of the agency's imminent termination on September 18. Compl. ¶¶ 25, 43. This action was consistent with a public notice the Commission posted on its website that it would cease accepting FOIA requests after September 11, 2020. Compl. ¶ 25.

## B. Plaintiff's FOIA Request to NARA

Upon the Commission's termination, its records were transmitted to NARA. These records may be divided into three tranches for purposes of this motion. First, the Commission's records deemed "permanent" under applicable records schedules were transmitted to NARA for archival preservation. Compl. ¶ 17 (permanent Commission records transmitted to NARA); Ex. A, Email from NARA to Plaintiff (Sept. 24, 2020).[1]

Second, some of the Commission's records deemed "temporary" are subject to certain retention periods under applicable records schedules and have been transmitted to NARA for maintenance during those periods. Ex. A (referencing "temporary records that were subject to a retention period beyond the termination of the Commission pursuant to the General Records Schedule (GRS) for which NARA took legal custody"). For example, GRS 4.2 provides that FOIA case files are temporary records that are to be preserved for "6 years after final agency action" on the request or "3 years after final adjudication by the courts, whichever is later." General Records

---

[1] Plaintiff repeatedly quotes from and references Exhibit A in the Complaint. *See* Compl. ¶¶ 29, 49, 51. It may therefore be considered as part of this motion to dismiss without converting it to a motion for summary judgment. *See W. Wood Preservers Inst. v. McHugh*, 292 F.R.D. 145, 149 (D.D.C. 2013) (considering a document on a motion to dismiss where the complaint "quote[d] from" and "discuss[ed] it extensively").

5

Schedule 4.2: Information Access and Protection Records, Nat'l Archives & Records Admin., Item 020 (June 2023), https://www.archives.gov/files/records-mgmt/grs/grs04-2.pdf.  NARA is preserving such records during the required retention periods.  *See* Ex. A.

Third, some of the Commission's records were scheduled as "temporary" for destruction upon the termination of the Commission's existence.  Ex. A (referencing the Commission's "temporary records that were appropriately scheduled for disposal upon the termination of the Commission"); Compl. ¶ 51.  NARA's position is that it does not have legal custody over these records, which were not scheduled for preservation beyond the Commission's existence.  Compl. ¶ 18.  Nonetheless, "[i]n order to allow plaintiff to pursue this litigation, NARA also agreed to retain physical access to (but not legal control over) the records that were properly eligible for destruction by the Draft Commission upon its termination."  *See* Joint Mot. to Stay at 1–2, ECF No. 6.

Plaintiff submitted a FOIA request to NARA on September 21, 2020, seeking records of the Commission.  Compl. ¶ 26.  NARA responded shortly thereafter, explaining that it had divided Plaintiff's FOIA request in two for processing purposes, between the Commission's permanent and temporary records.  Compl. ¶ 27; Ex. A.  As to the portion of Plaintiff's request "seeking access to permanent records of the Commission that have been accessioned into the National Archives," the request is being handled by the division within NARA that is the custodian for the permanent archival holdings of federal agencies.  Ex. A.  Plaintiff does not challenge that portion of NARA's handling of his FOIA request.  Compl. ¶ 28 (stating that the "portion of the NARA request for the Draft Commission records deemed 'permanent' . . . is not contested in this lawsuit").

As to the "temporary" Commission records, NARA advised that its response would differ as between tranches two and three described above.  NARA explained that it would search and

6

process "those temporary records that were subject to a retention period beyond the termination of the Commission" pursuant to the GRS. Ex. A. NARA further explained, however, that it would not search for or process records insofar as the request sought records falling in the third tranche, *i.e.*, the temporary records that were scheduled for disposal at the end of the Commission's existence. Ex. A. NARA's release of records in response to Plaintiff's FOIA request is ongoing. Compl. ¶ 28.

      **C.**      **This Lawsuit**

Plaintiff filed this lawsuit on February 21, 2021, alleging three causes of action against NARA. *See generally* Compl. First, Plaintiff pursues a purported first cause of action concerning "unlawful destruction of records and removal from custody." Compl. ¶¶ 31–39. Plaintiff asks the Court to issue a declaratory judgment that the "destruction of temporary records subject to a FOIA request in fewer than six years from the date of the final agency action" on the request is a violation of the FRA and its implementing regulations. Compl. ¶ 38. Plaintiff further seeks a declaration that it would violate the FRA and its implementing regulations for such records to be deemed not to be in the legal custody of any agency because the original agency ceases to exist. *Id.* Plaintiff roots this claim in GRS 4.2, which he contends covers all "records subject to a FOIA request" and thereby imposes a mandatory retention period for covered temporary records. *See* Compl. ¶¶ 33, 37.

Plaintiff's second cause of action seeks FOIA relief regarding the nine requests he submitted to the Commission and which the Commission closed or refused to accept. Compl. ¶¶ 40–46. Plaintiff seeks such relief against NARA, even though Plaintiff submitted all such requests only to the Commission. Compl. ¶ 41 (alleging Plaintiff submitted these requests "to the Draft Commission").

Third, Plaintiff's third cause of action seeks FOIA relief against NARA regarding its handling of the aspect of his FOIA request to NARA seeking "temporary" records of the Commission.  Compl. ¶¶ 47–53.  Plaintiff challenges NARA's determination that it will not search for or process the portion of temporary Commission records that were scheduled for disposal at the termination of the Commission's existence.  Compl. ¶ 53.

Shortly after this case was filed, the parties jointly moved to stay proceedings to "explor[e] possible resolution of some or all of the FOIA requests at issue in this case."  Joint Mot. to Stay at 2.  The Court granted the requested stay on May 13, 2021, and the parties thereafter filed a series of joint status reports advising the Court of their efforts to settle the claims in the case, including participation in non-binding mediation.  *See* ECF Nos. 7–19.  The parties advised the Court in June of this year that their efforts at settlement had been unsuccessful, ECF No. 20, and the Court then lifted the stay and set a schedule for briefing on Defendant's anticipated motion to dismiss in part, *see* Minute Order of July 20, 2023.  This motion timely follows.

## STANDARD OF REVIEW

Defendant moves to dismiss in part pursuant to Rules 12(b)(1) and 12(b)(6).  To survive a motion to dismiss under Rule 12(b)(1), Plaintiff bears the burden of establishing the court's jurisdiction through sufficient allegations.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  To survive a Rule 12(b)(6) motion to dismiss, the Complaint must "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  Under either dismissal standard, courts apply the standard of Rule 8(a) of the Federal Rules, which requires that a complaint contain factual allegations that, taken as true, "raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  It is not enough that the allegations are "consistent with" or show a "sheer possibility" of liability.  *Iqbal*, 556 U.S. at 678.

8

Courts need not accept as true allegations that are actually mere legal conclusions.  *Id.*

In evaluating the sufficiency of the Complaint, the Court may consider "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997); *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011).

## ARGUMENT

Plaintiff's first and second causes of action have multiple fundamental defects that require dismissal at the threshold.  As to the first, Plaintiff lacks a cause of action to enforce the FRA in the manner he attempts and fails to state any claim under the APA.  And as to the second, Plaintiff lacks standing and fails to state a claim to sue NARA regarding FOIA requests he submitted to a different agency, the Commission.

**I.     PLAINTIFF'S FIRST CAUSE OF ACTION IS FORECLOSED BY STATUTE AND OTHERWISE FAILS TO STATE A CLAIM.**

Plaintiff's first cause of action—seeking declaratory relief regarding the proper preservation status of certain Commission records—is foreclosed by statute and controlling precedent.

To begin, Plaintiff does not clearly articulate the legal basis for the first cause of action. Plaintiff asserts that he is entitled to relief under the Declaratory Judgment Act ("DJA") but that statute does not provide a cause of action.  *Ali v. Rumsfeld*, 649 F.3d 762, 778 (D.C. Cir. 2011) ("Nor does the Declaratory Judgment Act (DJA), 28 U.S.C. § 2201, provide a cause of action."). Because the DJA is not an "independent source of federal jurisdiction," the "availability of [declaratory] relief presupposes the existence of a judicially remediable right."  *See C&E Servs., Inc. of Wash. v. D.C. Water & Sewer Auth.*, 310 F.3d 197, 201 (D.C. Cir. 2002) (quoting *Schilling*

9

*v. Rogers*, 363 U.S. 666, 677 (1960) (alteration in original)).  In short, the DJA does not give Plaintiff any right to relief on its own.

It appears that Plaintiff is instead seeking relief to compel compliance with the Federal Records Act.  *See* Compl. ¶ 37 (alleging that certain actions would violate the FRA and one of its implementing regulations).  But that does not suffice either: the FRA itself "does not contain an express or implied private right of action."  *Judicial Watch, Inc. v. Kerry*, 844 F.3d 952, 954 (D.C. Cir. 2016) (citing *Kissinger*, 445 U.S. at 148–50).  Therefore, there is no basis for a plaintiff to directly sue under the FRA for relief.  *See Kissinger*, 445 U.S. at 148–50 (explaining that "Congress has not vested federal courts with jurisdiction to adjudicate" enforcement of the FRA "upon suit by a private party").

That leaves the Administrative Procedure Act, which provides a cause of action for persons "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action."  5 U.S.C. § 702.  It bears noting that Plaintiff nowhere invokes the APA or mentions it.  In all events, however, any attempt to invoke the APA's cause of action would fail in light of the numerous limitations to which it is subject.  As relevant here, a plaintiff can only state a claim under the APA where APA review is not precluded by another statute, *id.* § 701(a)(1), where the matter in question is not committed to agency discretion by law, *id.* § 701(a)(2), and where the Plaintiff challenges "final agency action," *id.* § 704.  Plaintiff fails to meet these standards in his first cause of action against NARA.

The D.C. Circuit and courts of this district have applied the FRA to narrowly limit the kinds of FRA-related claims that may be brought under the APA.  In particular, the D.C. Circuit has held that the FRA precludes judicial review of claims that agency officials are "not complying with" recordkeeping guidelines or claims seeking relief "to prevent an agency official from improperly

10

destroying or removing records" subject to retention under the FRA. *See Armstrong*, 924 F.2d at 294 (holding that the FRA "preclude[es] private litigants from suing directly to enjoin agency actions in contravention of agency guidelines"); *see also Competitive Enter. Inst. v. EPA*, 67 F. Supp. 3d 23, 32 (D.D.C. 2014) (explaining that *Armstrong* treats as "unreviewable challenges to the agency's day-to-day implementation of its guidelines"); *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Homeland Security*, 527 F. Supp. 2d 101, 111 (D.D.C. 2007) ("Given the firm language in *Armstrong I*, [plaintiff] is precluded from suing [the agency] to enjoin the agency from acting in contravention of its own recordkeeping guidelines or the FRA." (citation omitted)). This preclusion of APA review is rooted in the enforcement scheme of the FRA, which "contains a prescribed method of action" when alleged removal of records occurs, specifically governmental enforcement through the Attorney General upon a referral from the head of a concerned agency or the Archivist. *Armstrong*, 924 F.2d at 294. Suits by private litigants regarding such alleged improper removal or destruction of records would "clearly contravene this system of administrative enforcement" and, accordingly, "the FRA precludes judicial review of such actions" under section 701 of the APA. *See id.*

Plaintiffs' first cause of action is on all fours with the kind of FRA-compliance-based claim that is foreclosed by *Armstrong* and its progeny. Plaintiff asserts that certain temporary records that were eligible for immediate disposal at the Commission's termination must be preserved by NARA because they are instead subject to GRS 4.2, which requires retention of certain temporary records for a specified period of time. Compl. ¶¶ 32, 33. Plaintiff argues that premature destruction of records subject to a NARA-prescribed retention period like this violates the FRA and its implementing regulations. Compl. ¶¶ 37, 38. Thus, Plaintiff fundamentally seeks in his first cause of action "to prevent an agency official from improperly destroying or removing

11

records" subject to retention under the FRA and to prevent asserted "agency actions in contravention of agency guidelines." *See Armstrong*, 924 F.2d at 294. That kind of claim is foreclosed by the FRA.

Plaintiff may suggest that the Circuit has recognized two kinds of FRA claims that may be pursued under the APA. But the first cause of action bears no resemblance to either.

First, *Armstrong* allowed an APA claim alleging that an agency's "recordkeeping guidelines and directives do not adequately describe the material that must be retained as 'records' under the FRA." *Armstrong*, 924 F.2d at 292. In *Armstrong*, the plaintiffs alleged that National Security Council guidelines did not conform to the FRA because they failed to require the preservation of records created or received on an intra-office e-mail system. *See Armstrong*, 924 F.2d at 286. The D.C. Circuit emphasized that "the FRA understandably leaves the details of records management to the discretion of individual agency heads." *Id.* at 293. Moreover, "agency personnel, not the court, will actually decide whether specific documents . . . constitute 'records' under the guidelines." *Id.* at 293–94. The court nonetheless held that the plaintiffs' challenge was justiciable because "the only issue a court would be asked to consider" was whether the agency's guidelines were in "conformity" with statutory directives and "consistent with" NARA regulations. *See id.*

Plaintiff has pleaded no such claim challenging the Commission's or NARA's records schedules or retention policies. Indeed, the premise of the first cause of action is not that GRS 4.2 or some other regulation or guideline is invalid or inadequate; it is that the Commission or NARA has not *complied* with GRS 4.2 and the FRA or may not in the future. *See* Compl. ¶ 37 (arguing that destruction of certain records would be a "violation of the FRA and 36 C.F.R. § 1230.10"). The Complaint does not allege any deficiency in the Commission's or NARA's recordkeeping

12

guidelines or directives but, rather, attempts to raise the very claim that *Armstrong* held was *not* permitted—a challenge to an alleged failure to comply with recordkeeping guidelines or directives.

Second, *Armstrong* held that, although a plaintiff may not challenge an agency's compliance with recordkeeping requirements, they may seek "judicial review of the agency head's or Archivist's refusal to seek the initiation of an enforcement action by the Attorney General" under 44 U.S.C. § 3106. *See Armstrong*, 924 F.2d at 295. But Plaintiff does not plead any such claim here and does not seek relief regarding pursuit of any action through the Attorney General. *See* Compl. at 9–10 (Prayer for Relief). Nor does Plaintiff allege that NARA is aware of, or has caused any, unlawful removal or destruction of Commission records. Indeed, Plaintiff's allegations regarding unlawful destruction of records are all phrased in hypothetical terms. *See* Compl. ¶ 39 (explaining that relief on the first cause of action would "signal[] to NARA" that any future destruction of records is unlawful). This part of *Armstrong* is therefore inapposite.

In sum, Plaintiff fails to state any claim in his first cause of action and it should accordingly be dismissed.

**II.   PLAINTIFF LACKS STANDING TO SUE NARA FOR RELIEF ON HIS SECOND CAUSE OF ACTION AND FAILS TO STATE A CLAIM.**

Plaintiff's second cause of action seeks relief against *NARA* regarding nine FOIA requests he submitted to the *Commission*. Plaintiff simply has the wrong defendant and his FOIA claims in the second cause of action accordingly fail on both jurisdictional and merits grounds.

**A.   Plaintiff Lacks Standing to Sue NARA Because His Asserted FOIA Injuries are Not Traceable to NARA.**

The Court's analysis of the second cause of action should begin, as it must, with jurisdiction. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). To support Article III jurisdiction, Plaintiff must plead the three elements of standing to sue: injury-in-fact,

traceability, and redressability. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). And because "standing is not dispensed in gross," "a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017) (citations omitted).

Plaintiff's assertion of standing as to the second cause of action fails under the second element of standing, traceability. To meet the traceability threshold, Plaintiff must show that his injury is "'fairly traceable to the challenged action *of the defendant*,' meaning that 'there must be a causal connection between the injury and the conduct complained of.'" *Dep't of Educ. v. Brown*, 143 S. Ct. 2343, 2351 (2023) (emphasis added) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). Traceability fails where the alleged injury is "the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (cleaned up) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976)).

The alleged action of a third party not before the Court—the Commission—is the *sole* cause of the alleged injury asserted in the second cause of action. The basis for this claim is Plaintiff's contention that he "has a legal right under FOIA to obtain the information he seeks from these nine requests." Compl. ¶ 46. But all of those FOIA requests were submitted to an entity not before the Court—the Commission—and all of the assertedly unlawful actions on those FOIA requests were taken by that same entity not before the Court—the Commission. Compl. ¶¶ 41–44 (alleging that the requests were "submitted to the Draft Commission" and that the Commission took various actions regarding them). Moreover, Plaintiff nowhere alleges that NARA had anything at all to do with the Commission's handling of the requests. That is fatal under the traceability analysis. Again, traceability requires that the challenged action "of the defendant" is

14

the cause of the injury asserted, not "independent action of some third party." *See Lujan*, 504 U.S. at 560.

Plaintiff's Complaint suggests at least three potential counterarguments that Plaintiff may pursue. None suffice to salvage the traceability defects in the second cause of action.

First, Plaintiff refers to NARA as the Commission's "successor agency," presumably meaning to argue that NARA has assumed the Commission's legal obligations, including any obligation or liability it has under FOIA. Compl. ¶ 5. But Plaintiff points to no law or other evidence showing that NARA is in fact a successor agency to the Commission. To the contrary, the Commission's organic statute simply states that the Commission would expire in full after a set period of time, 2017 NDAA, § 557, 130 Stat. 2137, and Plaintiff's Complaint recognizes that it has in fact so expired, Compl. ¶ 14. And neither the Commission's organic statute, nor FOIA, include any provision about NARA serving as a successor agency for any purpose to the Commission, let alone a successor as to the Commission's legal obligations under FOIA. NARA's role, instead, is to "accept for deposit with the National Archives of the United States the records of a Federal agency . . . determined by the Archivist to have sufficient historical or other value to warrant their continued preservation by the United States Government." 44 U.S.C. § 2107(a)(1).

Second, Plaintiff may argue that he has standing to sue NARA based on his assertion that NARA has stated "it will take no action on the pending requests and appeals submitted to the Draft Commission." Compl. ¶ 44. But this allegation explicitly recognizes that the FOIA requests at issue in the second cause of action were *not* submitted to NARA. Therefore, NARA has never been under any legal duty to do anything at all regarding them. *See* 5 U.S.C. § 552(a)(3)(A) (requiring agencies to make "records promptly available to any person" upon receipt of a "request for records" that conforms to certain statutory and regulatory requirements).

15

Finally, Plaintiff may argue that it makes some difference that NARA currently has physical possession of the Commission's records, including the FOIA requests at issue in the second cause of action. But there is no provision in FOIA or any other statute establishing a game of "hot potato" in which FOIA requests must be answered by whatever agency happens to hold the request. The statute, instead, requires an agency to release records in response to requests submitted to *it* by the public. *See id.* § 552(a)(3)(A). Plaintiff cannot demonstrate that any injury under FOIA regarding these requests is traceable to NARA.

### B. Plaintiff Fails to State a FOIA Claim Against NARA Regarding Requests to a Different Agency.

Plaintiff fails to state a FOIA claim against NARA based on requests he submitted to the Commission for many of the same reasons that he has failed to established traceability.

FOIA creates federal court jurisdiction and a cause of action "to enjoin [an] agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." *Id.* § 552(a)(4)(B). In keeping with this statute, the Supreme Court interprets this provision to mean that "federal jurisdiction" for a FOIA claim "is dependent on a showing that an agency has (1) 'improperly' (2) 'withheld' (3) 'agency records.'" *Tax Analysts*, 492 U.S. at 142 (quoting *Kissinger*, 445 U.S. at 150). "Judicial authority to devise remedies and enjoin agencies can only be invoked . . . if the agency has contravened all three components of this obligation." *Kissinger,* 445 U.S. at 150.

Thus, not only must a plaintiff show the three elements of (1) improper (2) withholding of (3) agency records—he must also show that such elements were the result of conduct of the agency sued. Plaintiff cannot meet that burden where the FOIA requests at issue were not submitted to NARA and where all the alleged agency actions resulting in assertedly "improper" "withholding" of "agency records" were taken by an agency other than NARA and where there is no basis to say

16

that NARA has assumed the Commission's obligations under FOIA.  *See supra* pp. 14–16.

At least two additional principles articulated in FOIA jurisprudence underscore the fundamental defect of Plaintiff's attempt to sue a different agency from the one to which he submitted his FOIA requests.

First, the Supreme Court has held that "the agency must be in control of the requested materials at the time the FOIA request is made" to be subject to judicial relief on a FOIA request. *Tax Analysts*, 492 U.S. at 145.  But here, Plaintiff concedes that NARA came into possession of the Commission's regards *after* he submitted his last FOIA request to the Commission.  Compl. ¶ 17.  Even if the Court were to construe Plaintiff's FOIA requests to the Commission as implicitly redirected to NARA, that would avail Plaintiff nothing as NARA did not possess the Commission's records when Plaintiff made those requests.

Second, courts have repeatedly rejected attempts to plead FOIA claims against the "United States" because FOIA jurisdiction exists as to claims against an *agency*, not the Government in general.  *See, e.g.*, *Sanders v. United States*, No. 96-5372, 1997 WL 529073, at *1 (D.C. Cir. July 3, 1997) (unpublished per curiam order) (dismissing complaint against the "United States" because "the defendants named in the complaint are not agencies subject to" FOIA); *Batton v. Evers*, 598 F.3d 169, 173 n.1 (5th Cir. 2010) (stating that the United States was not "a proper party to this action"); *Eames v. United States*, 2014 WL 4803160, at *6 (D. Utah Sept. 26, 2014) ("Because the entire 'Government of the United States' is not an agency under FOIA, Plaintiff brings the aforementioned FOIA claims against the wrong party and therefore fails to state a claim upon which relief can be granted." (citing cases)).  The lesson of these cases applies here: Plaintiff cannot sue NARA for asserted violations of FOIA by the Commission, just as he would not be able to sue the United States more generally.

A brief note about the import of all this bears mentioning. Plaintiff is entitled to pursue FOIA requests against NARA on whatever subject he wishes (subject to the limits of the statute of course). And he has done so here regarding the Commission's records, as shown in the request he actually submitted to NARA that he is litigating in the third cause of action of the Complaint. NARA is responding to that request, albeit in a manner subject to dispute among the parties that may need to be resolved at summary judgment. What Plaintiff cannot do, however, is what he attempts in the second cause of action: sue NARA about FOIA requests he submitted to some other agency. That approach has no basis in FOIA or its jurisprudence.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint's first and second causes of action.

Dated: October 5, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Director

/s/ *James R. Powers*
JAMES R. POWERS (TX Bar No. 24092989)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, D.C. 20005
Tel: (202) 353-0543
E-mail: James.R.Powers@usdoj.gov

*Counsel for Defendant*